Good morning, your honors. May it please the court, my name is Brian Weiss. I am the attorney representing Colony Insurance Company, the defendant and the appellant in this case. Justice Graham, welcome to the South Lane. It's nice to have a Buckeye Stones throw away from the Rose Bowl. And I was here in January. Oh, were you? Yes. I thought you brought some Ohio weather with you this morning. It looks like it. It looks like we're in better shape for the week to come. And thank you for allowing me the opportunity to talk about this case this morning. You know, I've been doing this type of law for over 20 years. I find something fascinating about this particular case because I think it goes beyond just one insurance company suing another insurance company to get some money back for the defense that it provided. I think it provides the court with, you know, a unique opportunity to really dig deeper into the laws in California around pleading requirements and what triggers a duty to defend, potential for coverage, and all that good stuff. Because I think the issue before this court really is how far can a court go to rewrite, in essence, a complaint in which the plaintiff chose not to pursue a certain theory or a certain recovery or a certain cause of action, left it on the cutting room floor, so to speak. And then the court comes back in later and says, well, you know, there's a little nugget of something in there that maybe could develop into a potentially covered thing, cause of action. So because of that, we're going to go ahead and find that there was a potential for coverage. And the problem I have with that, Your Honors, is that my client quite clearly and expressly and unambiguously said in this policy, we are not going to provide coverage for trademark infringement claims. It's just not something that you paid a premium for. It's just not something we're going to cover you for. Except for advertising, right? Well, even if there was advertising. Isn't that right? Isn't that what the policy covered, advertising? Not trademark infringement in advertising. It covered certain types of offenses if they occurred in the course of advertising. You're exactly correct. And what were they? With the exception of trademark and certain other things delineated in the endorsement. I don't, you know, there's absolutely no disputing the fact that the policy did cover the insured for things such as slogan infringement and arguably trade dress infringement, had those been alleged against it. So in advertising, that's exactly correct. But it didn't issue a blanket all risk policy for anything that might occur in the course of advertising. So your answer to my question really is yes, we covered trademark and trade dress infringement so long as it was contained in advertising. No, that's not accurate. It's not right? No. Let's look at what the policy says. What does it say? Hmm. The parties agree that the colony policy covers slogan and trade dress infringement but excludes trademark infringement. That's correct. That's what I'm saying. All right. So you do say you cover slogan and trade dress infringement. Correct. There's no dispute. So what's the dispute? If it's contained in advertising. Correct. All right. Correct. So what the dispute really boils down to is did this complaint seek damages for slogan infringement or trade dress infringement? And you look at the very first sentence of the complaint, which is page 78 in the excerpt of records, and it says this action arises from defendants' willful and blatant counterfeiting and unauthorized use of trademarks owned or controlled by NFL properties. And you have an insurance policy that says we don't cover that kind of stuff. And then you go through the rest of the complaint and all it talks about is trademark, trademark, trademark, trademark, trademark. So my client, I believe rightfully, said, no, we're not going to participate with you, Hudson Insurance Company, in defending our insurance. Now, the Hudson policy clearly allowed for coverage for these types of claims. That's why they really had no choice but to defend because their policy did not have this unique exclusion for trademark infringement claims. So Hudson, as it was obligated to do, provided a defense and then came back against my client and said, you know, we want half of our fees banned. Well, but the colony policy used the word slogan, right? The colony policy and both policies for that matter. Both cover, would cover a claim for slogan infringement. And then there's this business about potential infringement, the potential slogan infringement. And that's the essence, that's the nub of this case, so to speak, in that what you have is an insurer who is selling a bunch of NFL jerseys and none of them contain the slogan on them, except for this one jersey from the Pittsburgh Steelers, which has the sprays on it, called Steel Curtain. Now, the NFL never said, hey, that's a slogan, and we want damages for you selling a jersey that had that slogan on it. The gist of the NFL's complaint was that you were selling jerseys that were not authorized by our agreements with the NFL properties, with the teams. And it didn't extract that Pittsburgh Steelers jersey with the phrase Steel Curtain on it and say, well, that one's different from all the other ones because it has a slogan. The word slogan never appears in this complaint. That word does not appear anywhere, nor does the word trade dress. It was simply a matter of a jersey that happened to contain a phrase on it, and then the trial court, with Hudson's urging, jumping onto the train of, well, boy, that's a potential slogan infringement. But the NFL never chose. The NFL knows or must have known that it had a possibility of recovery for a slogan infringement there and chose not to pursue that. Didn't the complaint say, quote, the Steelers have strong common law rights in the mark, quote, Steel Curtain? Yes. But it doesn't say the NFL has the rights to that mark. So the NFL may not even have had standing to pursue any rights associated with that phrase. Doesn't the complaint say that the NFL properties, and that's the plaintiff here, I take it, promotes the intellectual property of the member clubs and protects all the marks owned by the member clubs? Yes. Again, it uses the word marks, not slogan. And they describe this Steel Curtain as a mark, but it's really a slogan, isn't it? Well, that's up for debate as well, but that's not before this court, whether or not it's a slogan. It's a factual question. If it's a mark, it's not a slogan. I contend that a trademark, and we briefed it as a different beast and a different animal than a slogan, a trademark is a Nike, Apple, something that you identify with the product, whereas a slogan is a phrase, a catchy phrase. You're in good hands with all the Steelers. You see all these Pittsburgh Steelers and their Steel Curtain. Right. That's more in the nature of a slogan, isn't it? Correct. All right. And they said in the complaint that that was infringed and that they owned it. They called it a mark. But to me, that almost makes my argument for it in the sense that if this was, if the NFL was treating this as a slogan infringement, why didn't they sue for slogan infringement? Why didn't they call it a slogan? There must have been some reason they chose not to go down that path. And I don't think it's the court's function to say to the NFL, you know, you chose not to sue for slogan infringement. You chose to limit your remedies to just trademark infringement. But you know what? We're going to go ahead and rewrite that complaint for you. We're going to throw in damages for slogan infringement, even though you chose not to, simply so that we can get another carrier on the hook here to defend. When I first saw that statement a long time ago, but the duty to defend is broader than something about liability. What the hell is this all about, you know? And so maybe I'm finding out now. Well, you know, and that's just it. It is broader than. Absolutely. I mean, that's boilerplate law, that the duty to defend in California, and it's something I'm teaching, Your Honor, is very broad. But there are case law that I cited in the briefs that act as a limitation to that broad duty, as a kind of a break, so to speak. And that's where this case falls into, which is, yes, the duty to defend is broad, and any potential for coverage creates the duty to defend. But on the flip side of that coin, we're not going to go and dig and hunt and speculate and trade out of whole cloth something that might create a potential for coverage that's not otherwise in the complaint. And it's our position that that's what's happening here, is that the trial court looked at a complaint, saw a little nugget of something in there, and said, well, you know, that's it. There was a potential that the complaint could have been amended to seek damages for that. And my position really is this complaint could have been amended to add a cause of action for RICO or civil rights violations, you know, if anyone can plead anything and file it with the court. So I think that standard of saying, you know, could it have been amended is too broad in this case. Now, if I would submit to you, Your Honors, that if the complaint had said the phrase, slogan infringement, slogan infringement, slogan infringement all over the place, and it wasn't a cause of action with that title on it, then we get a little bit closer to the body of law about the broad duty to defend. But my point here, as I stated before you, is that the NFL is obviously a very experienced litigator and a very aggressive enforcer of its intellectual property rights, as was the firm it retained. I have no doubt in my mind they were aware of its range of remedies, of intellectual property remedies, including such things as slogan infringement damages, trade dress infringement damages, and chose that under what happened here in these facts, this was simply a trademark infringement case. And I just don't think that it's the role of courts to rewrite a complaint for the plaintiff and inject remedies that they chose not to pursue themselves, simply for the sake of finding fault. Do you want to save some time? I will, thank you. Good morning, Your Honors. Eric Little of Little, Reed, and Carzai for Hudson Insurance Company. Excuse me. My client did the right thing. California insurance law is very broad in the duty to defend. The Supreme Court from courts on down consistently encouraged insurance companies to do just what my client did, which is defend where there's a potential for coverage. And counsel's argument was quite telling when he conceded that the complaint could be amended to allege a covered cause of action under his client's policy, because that's the standard for a duty to defend in California. Potential for coverage could be amended. But in this case, we're not in that far space over here and it could be amended. We have it on the face of the complaint, the face of the NFL properties complaint against our policyholder. You know, you've got to stick to that podium because we take everything down. You're on camera. You may not know it, but you are. You're being watched by the world. I should have put on a little makeup this morning. You look good, yeah. You should have worn your T-shirt. Potential for coverage, that's the standard. My client did the right thing. We're here because my client did the right thing. And colony also had a defense obligation. There doesn't need to be a labeled cause of action. That's well-established California law. It's well-established across all the states. It doesn't have to be a labeled cause of action. It doesn't have to be a cause of action labeled slogan infringement. There doesn't have to be a cause of action labeled trade dress infringement. In this case, we've come pretty close, though. Paragraph 18 of the complaint, if you're on this, look to it. It's under this heading. It's on page, excerpts of record, page 83. It's under this big bold heading in all caps. It says, Defendants Unlawful and Infringing Conduct. And it's not the first paragraph they talk about the slogan, but it's the second paragraph that they talk about the slogan. Paragraph 18, it says, Exhibit B displays an image of a counterfeit jersey offered for sale on www.allauthentic.com as a, quote, on the left, next to an authentic NFL uniform design jersey on the right. Again, steel curtains, that slogan. The counterfeit jersey reads, quote, steel curtain across the back and bears the numbers of four Pittsburgh Steelers players using the same style of numbering and lettering as appears on the authentic Pittsburgh Steelers NFL uniform design jerseys. Again, that slogan, steel curtain. Remember, a slogan is defined both under California law, a final case, as a brief attention-getting word or phrase used in advertising and promotion. Well, steel curtain, you betcha the Pittsburgh Steelers were using that to sell tickets during the 1970s, the defensive line. It's not the name of the team. It's not the name of the shirts. It's not the NFL. It is something you're using to sell tickets. You get to go see the steel curtain. Again, that is a brief attention-getting word or phrase used in advertising or promotion. Now, the other aspect of this is what is a slogan in intellectual property law? Slogans are protected under trademark law. The Zen Design case says that, as does the Super Duper Law. Well, yeah, they took that, the Steelers took that from Winston Churchill, didn't they? I think so. I think so. They came as a state and they roiled it. Well, I guess the intellectual property laws in Britain are different than they are here. But certainly the Pittsburgh Steelers got a common law, got a state-registered mark. And remember, NFL properties in paragraph 5, as Your Honor quoted, says that they have the right to protect and pursue all those marks. They allege it in their complaint. The NFL properties, and so, again, my client defended it. But getting back to the issue of what protects a slogan in the United States, it's trademark law. So you have Colony's Policy. It's very similar to my client's policy. There are some differences, which counsel has noted. But Colony's Policy, under the Advertising Injury Coverage, does have an exclusion for trademark infringement. At the end of that exclusion, they have a carve-out, which is the same offense that's in my client's policy, which is for infringement of slogan, trade dress, and title. Now, my client has other aspects to his policy that are broader than Colony's. But the key is that Colony provided coverage for trade dress infringement. We know trade dress infringement is a subspecies of trademark infringement. And, in fact, there's an express cause of action in this complaint for 1125A, which is how you enforce your trade dress. And it's not like the cause of action determines coverage. It's the theory of recovery. It's the potential for coverage. Or, as my opposing counsel says, could be amended. But here we do have an express cause of action for trademark infringement. The second mark they allege under their heading, Defendants Unlawful and Infringing Conduct, is this slogan. To finish the quote, getting back to where I was, Steelers have strong common law rights in the mark Steel Curtain and own estate registration for the mark Steel Curtain Pittsburgh Steelers. The counterfeit jersey features the same black and gold color combination as the official Pittsburgh Steelers NFL uniform design. Who pays the premium on these policies, the NFL? No, the NFL was the plaintiff in the underlying lawsuit. Our policyholder and Colony policyholder, all authentic, purchased these general liability policies. So we did the right thing, again, Your Honor. We defended all authentic. That's our obligation under well-established California law. The title of the cause of action doesn't matter. It's the allegation. Again, we've got the second allegation under Defendants Unlawful and Infringing Conduct is an allegation of slogan infringement. Slogans are protected by trademark law. It's undesigned in the suit with the decision. And it's clear that the NFL is alleging that the Steel Curtain is protected under trademark law. Now, did they ever use the word slogan infringement anywhere in their complaint? No, and both Palmer, which is a California case, and the Zen Design case, which is a Sixth Circuit case, stand for the proposition that you don't have to use the phrase slogan. And in fact, most cases, a good intellectual property attorney wouldn't be using slogan because they don't have to. Slogans are protected under trademark law, Your Honor. So you're saying by simply quoting the slogan that was enough. All there has to be is a potential slogan and there's a defense obligation. And that's under well-established California law. And counsel talks about extending the boundaries of California duty to defend law, and we're not asking the court to do that. And it's not necessary here because under the well-established law, all that's required is a potential for coverage. So a single allegation can create a defense obligation. You're both squinting at me. Am I hit? No, no. Are you what? Both of Your Honors were squinting at me, and I wanted to make sure I wasn't going off the reservation. No, I was just closing my eyes and praying. That's what I was doing for the half an hour before we started. I'd like to talk briefly about the slogan aspect. We've got six minutes left. So there's no speculation about the allegations of slogan infringement. They appear on the face of the complaint. We're not talking about all of counsel's speculation cases where the policyholder said that there's this fact outside the complaint that gives you a duty to defend. We're talking about a case where the allegations appear on the face of the complaint. Now, trade dress infringement claims, there's two aspects to the defense over here. The first one is slogan infringement. The second is trade dress infringement. They're brought under the general provision of the Lanham Act, which is 15 U.S.C. Section 1125A. It's the two pesos decision and the traffic devices decision, both Supreme Court's decision. And if you flip through to the excerpts of record, page 90, you'll see a third clause of action, trademark infringement under Section 43A of the Lanham Act, Section 15 U.S.C. 1125A. How is trade dress infringement enforced under the Lanham Act? It's under Section 1125A. That's how it's done. It's for unregistered marks. We've got the slogan over here, non-federally registered slogan, steel curtain. And we've also got the trade dress, which is enforced under – which is also enforced under Section 1125A. Draw your attention to paragraph 30 – 40, I'm sorry. Okay. In their false or misleading description of that – or false – I'm sorry. The unauthorized use of the NFL marks constitutes trademark infringement, comma, false designation of origin. Okay? False designation of origin. That is trade dress infringement. Why? Because trade dress protection applies to a combination of elements in which a product is presented to the buyer, including product, shape, design, and color. What are they alleging about – what is NFL Properties alleging about the jerseys? They're alleging that our insurer, a mutual insurer, copied the look, design, features of their jerseys. They're saying color blocking. They're saying that all athletes use the same color blocking, same colors, same stripes, that sort of thing, including the same fonts. Okay? And that's what they're saying is the trade dress infringement. So going back to paragraph 19, which is just one example of the many allegations of trade dress infringement. So, again, you're saying that although they didn't use the specific words trade dress, that there are other allegations described trade dress. Exactly, Your Honor. And that 1125A is where you bring – where claims for trade dress infringement are brought. And the allegations under the 1125A cause of action, which is title trademark infringement, but the allegations under 1125A include false designation of origin. Okay? And here's where we get the false designation of origin. Okay? Paragraph 18 is a great example. Exhibit B displays an image of a counterfeit jersey offered for sale on www. Oops, I'm sorry. I'm reading the wrong paragraph. Paragraph 19. Exhibit C displays an image of a counterfeit jersey offered for sale on www.allauthentic.com as a, quote, Joe Montana signed throwback 49ers jersey, close quote, on the left, next to an authentic NFL uniform design jersey on the right. The counterfeit jersey reads, quote, Montana, close quote, across the back and bears the number, quote, 16, using the same style of numbering and lettering as appears on the authentic. So same style of numbering and lettering is an allegation of trade dress infringement. They go on. On the authentic San Francisco 49ers NFL uniform design jerseys. And here's where we get to the color blocking and the patterns on the jerseys, the trade dress infringement again. The counterfeit jersey features the same red and white color combination and striping as the official San Francisco 49ers NFL uniform design jerseys. So when they're talking about the total appearance of the product, how it's presented to the consumer, that's trade dress infringement under federal law, 1125A. It's all got to do with palming off. Yes. Yes. Which is, you know, traditionally covered under an advertising injury policy. Now, again, we're dealing with very specific cases. You want to save some time for the next time you're here in court. I do love to talk. And it is an honor to be able to speak before this interview. If you have any questions. Otherwise, I'll pour you a glass. One last thing. Council started off with, you've been practicing for 20 years. I can't beat him. I've only been practicing for 18 years. Are you teaching this subject? I do a lot of speeches. What? I do speeches. Speeches? Yeah, before attorney groups. Before whom? Before attorney groups. Attorneys? Yeah, I do. That's how you get business. I like to think I get business because I'm so good at it. Thank you, Your Honor. It's a treat. Your smile. Thank you, Your Honor. Gets you a long way. It's been a real honor being here. I'm just really so happy to be here. Please come back soon. If you want. Sure. Not necessary. I'll just use up what is left of my time. I, too, speak before attorney groups and like to think I have a nice smile. Let me see it. It's great. Where is the camera pointed? You're going to compete with Tom Girardi pretty soon. Counsel, do they have to use the magic words, slogan, or trade dress, or is it sufficient if the facts in the complaint show that they're complaining about infringement of slogan and trade dress? I think when you have an exclusion in a policy that says we don't cover you for trademark infringement and everything, the only word used in here is trademark, the title of the causes of action are trademark, even paragraph 40, which counsel talked about, uses the word NFL marks with a capital M. From how I look at this, walking, talking, and smelling like a trademark infringement case, which is not something that is covered under the policy. There's no separate damages or even mention of the words trade dress or slogan infringement. And I grant you that California law does have a very broad spectrum of what it takes to trigger a duty to defend. I just believe that this case falls just shy of that, in that it was clear the NFL was not seeking damages for those types of If they had presented all of that evidence, they describe in the complaint in the courtroom, I'll bet the judge would have charged on the issues of slogan or trade dress infringement. That's an interesting question. There are a slew of cases out there that came out towards the end of last year. One's called Griffin dewatering. It's a California appellate court case where we're at trial. It came out that there was some type of an oral promise by an insurance company to extend coverage, and the court said, you can't prevail on a cause of action that you didn't seek in your complaint and didn't seek to amend your complaint to include. So you're out of luck. So I don't know what the court would have done on that case. The court would have said, this is a trademark infringement. Maybe. Again, thank you for your time, Your Honor. I enjoy being here. It's always a pleasure. Thank you for your time. Glad to have you here, and we'll recess until 9 a.m. tomorrow morning.
judges: Graham, Pregerson, Beezer